UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL, BOFA, AND MORGAN STANLEY SPOOFING LITIGATION <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS | Master Docket No. 19-cv-6002 (LJL) <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHN PACILIO AND EDWARD BASES'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Preliminary Statement ...................................................................................................................1

Applicable Standards .....................................................................................................................2

Argument .......................................................................................................................................4

    I.    The Complaint Must Be Dismissed for the Reasons Set Forth in the Bank Defendants' Memorandum ..........................................................................4

    II.    Plaintiffs Fail to State a Claim for Market Manipulation ....................................4

        A.    Plaintiffs Do Not Adequately Allege That the Individual Defendants Had the Ability to Influence Market Prices .............................4

        B.    Plaintiffs Do Not Allege That an Artificial Price Existed .........................6

        C.    Plaintiffs Fail to Allege that the Individual Defendants Caused Artificial Prices ............................................................................................7

        D.    Plaintiffs Fail to Allege that the Individual Defendants Intended to Manipulate Prices ....................................................................................8

    III.    Plaintiffs Fail to State a Claim for Manipulative Device ...................................11

    IV.    Plaintiffs Fail to State a Claim for Principal-Agent Liability .............................12

Conclusion ...................................................................................................................................12

## TABLE OF AUTHORITIES

**Federal Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  No. 13 Civ. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ..................................8

*In re Amaranth Natural Gas Commodities Litigation*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ....................................................................... 3, 9, 10, 11

*In re Amaranth Natural Gas Commodities Litigation*,
  612 F. Supp. 2d 376 (S.D.N.Y. 2009) ......................................................................... 3, 8, 9, 11

*In re Amaranth Natural Gas Commodities Litigation*,
  730 F.3d 170 (2d Cir. 2013) ...........................................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................2–3, 6

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................................................2

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .................................................................................................3–4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 2, 3, 4–5, 8

*CFTC v. Parnon Energy Inc.*,
  875 F. Supp. 2d 233 (S.D.N.Y. 2012) ..................................................................................5

*CFTC v. Wilson*,
  27 F. Supp. 3d 517 (S.D.N.Y. 2014) ....................................................................................5

*CFTC v. Wilson*,
  No. 13 Civ. 7884, 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ............................................10

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litigation*,
  No. 11 Md. 2213 (RPP), 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ...........................6, 7, 8

*CP Stone Fort Holdings, LLC v. Does*,
  No. 16 Civ. 4991, 2016 WL 5934096 (N.D. Ill. Oct. 11, 2016) .............................................10

*In re Crude Oil Commodity Litigation*,
  No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ..........................3, 5, 7

*DeAngelis v. Corzine*,
  17 F. Supp. 3d 270 (S.D.N.Y. 2014) ..........................................................................................9

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
   No. 13 Civ. 7789, 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ............................................5

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................11

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   935 F. Supp. 2d 666 (S.D.N.Y. 2013) ....................................................................................3

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016) ...................................................................... 6, 7, 11, 12

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018) ........................................................................ 5, 11, 12

*Naughright v. Weiss*,
   826 F. Supp. 2d 676 (S.D.N.Y. 2011) ......................................................................... 4, 5, 8, 12

*In re Platinum & Palladium Antitrust Litigation*,
   No. 14 Civ 9391 (GHW), 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)............................7, 11

*In re Platinum & Palladium Commodities Litigation*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011) ....................................................................................9

*In re Platinum & Palladium Commodities Litigation*,
   No. 10 Civ. 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)..............................................5

*In re Rough Rice Commodity Litigation*,
   No. 11 Civ. 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012)......................................................7

*Sullivan v. Barclays PLC*,
   No. 13 Civ. 2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ....................................9

*In re Vale S.A. Securities Litigation*,
   No. 15 Civ. 9539 (GHW), 2017 WL 1102666 (S.D.N.Y. March 23, 2017) .............................9

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................3, 6

**Federal Regulations**

Prohibition on the Employment, or Attempted Employment, of Manipulative Devices and
   Prohibition on Price Manipulation, 76 Fed. Reg. 41398-404 (July 14, 2011)..........................11

**PRELIMINARY STATEMENT**

Plaintiffs allege that Defendants John Pacilio and Edward Bases (the "Individual Defendants"), along with Defendants Merrill Lynch Commodities, Inc. ("MLCI"), Bank of America Corporation ("BOA") (together with MLCI, "BAML"), Morgan Stanley & Co. LLC, and 18 John Does, manipulated precious metals futures contracts and options on those contracts traded on the New York Mercantile Exchange and the Commodity Exchange, Inc. through "spoofing," i.e., "plac[ing] orders for precious metals futures contracts that they never intended to execute—and, in fact, canceled before execution—in order to send false and illegitimate supply and demand signals to the market." ECF 51, First Amended Consolidated Class Action Complaint ("FAC") ¶¶ 1–2. Based on these allegations, Plaintiffs contend that Defendants violated the Commodity Exchange Act ("CEA") and the common law prohibition against unjust enrichment. Plaintiffs purport to represent a class consisting of anyone trading in precious metals futures contracts or options on those futures contracts from January 1, 2007, to December 31, 2014. *Id.* ¶ 83.

Beyond the deficiencies requiring dismissal of Plaintiffs' claims enumerated in Defendants Morgan Stanley and BAML's Memorandum in Support of Their Motion to Dismiss ("Bank Defendants' Memorandum"), Plaintiffs fail to state a claim against the Individual Defendants upon which relief can be granted for market manipulation, manipulative device, or CEA principal/agent liability for the additional reasons set forth herein.[1] Despite the opportunity to remedy their pleading deficiencies, Plaintiffs' FAC is virtually identical to their Consolidated Class Action Complaint ("CCAC"), ECF 27, and fails for the same reasons. The FAC is replete with conclusions, labels, and group pleading. It lacks sufficient factual detail to meet even the standard

---

[1] The Individual Defendants join all of the arguments in the Bank Defendants' Memorandum. To avoid repetition, the Individual Defendants hereby incorporate the background section included in the Bank Defendants' Memorandum.

pleading requirements, much less the heightened pleading requirement that applies here under Federal Rule of Civil Procedure 9(b). For example, Plaintiffs fail to allege how either Pacilio or Bases, traders in a highly-liquid market, had the ability to influence market prices and instead simply allege in conclusory fashion that "Defendants" had the "ability to cause and did cause artificial prices." *See* FAC ¶ 105. They include no details or analysis regarding market pricing to demonstrate that prices were artificial or that either of the Individual Defendants proximately caused those prices. *See, e.g.*, *id.* ¶¶ 47, 48, 50, 52, 53, 56, 100, 102. Nor do they allege that Pacilio or Bases intended to cause artificial prices, whether by pleading motive and opportunity or highly unreasonable conduct.

Ultimately, Plaintiffs assert only a handful of allegations regarding Pacilio and Bases specifically, repeating nearly identical allegations of a total of twenty-eight alleged trading episodes over seven years. But allegations of spoofing without any details are insufficient to support Plaintiffs' claims of CEA violations, which at a minimum require particularized showings as to the existence of artificial prices, each Individual Defendant's ability and intent to affect prices, and the Individual Defendants' proximate causation of those artificial prices. Because Plaintiffs do not—and cannot—assert the particularized allegations necessary to sustain their CEA claims against the Individual Defendants, the Court should dismiss their claims.

## APPLICABLE STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 382–83 (S.D.N.Y. 2009) ("*Amaranth II*").

Plaintiffs' CEA claims must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which requires a complaint to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Here, Plaintiffs allege that the Defendants "manipulated the prices of precious metals futures contracts" by sending "false and illegitimate supply and demand signals" in the precious metals futures market.  FAC ¶¶ 2, 44, 47–48, 50, 52–53, 56–57, 60–61, 65, 69, 75, 77, 80, 100.  And because "market manipulation is inherently deceptive," a complaint alleging manipulation of commodities prices "must satisfy Rule 9(b)'s requirement." *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) ("*Amaranth I*"); *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 713–14 (S.D.N.Y. 2013) (allegations that defendants mislead the market "sound in fraud and thus must be pled with particularity"), *vacated and remanded on other grounds sub nom.*, *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007) (same).  The FAC, therefore, must articulate "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market" and must be "backed by specific facts supporting a strong inference of fraud." *In re Crude Oil*, 2007 WL 1946553, at *6, *8 (internal quotation marks omitted).

In addition, Plaintiffs must allege particularized facts to state a claim as to each defendant individually and cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir.

3

2001); *see Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011) ("When a claim is brought against multiple defendants, Rule 9(b) requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations.").

## **ARGUMENT**

As demonstrated below, the FAC fails to state a claim upon which relief can be granted against the Individual Defendants under the CEA—including under theories of manipulation, manipulative device, and principal/agent liability.

### **I.  The Complaint Must Be Dismissed for the Reasons Set Forth in the Bank Defendants' Memorandum**

The Individual Defendants join and incorporate by reference, as if set forth herein, all of the arguments in support of dismissing the FAC in the Bank Defendants' Memorandum.

### **II.  Plaintiffs Fail to State a Claim for Market Manipulation**

To state a claim for market manipulation, Plaintiffs must allege four elements with particularity: "(1) Defendants possessed an ability to influence market prices; (2) an artificial price existed; (3) Defendants caused the artificial prices; and (4) Defendants specifically intended to cause the artificial price." *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 183 (2d Cir. 2013) ("*Amaranth III*"). Plaintiffs fail to do so for *any* of the four elements.

#### **A.  Plaintiffs Do Not Adequately Allege That the Individual Defendants Had the Ability to Influence Market Prices**

Plaintiffs fail to plead any facts, let alone sufficient facts, to meet the heightened pleading standard, demonstrating that the Individual Defendants had the ability to influence market prices. Plaintiffs only allege the conclusions that "Defendants had the ability to cause, and did cause, artificial prices[,]" and that "Defendants . . . were active in the markets" for precious metals futures contracts. FAC ¶ 105. These unsupported allegations—identical to those in the CCAC—are precisely the sort of "labels and conclusions" insufficient to state a plausible claim for relief under

4

*Twombly* and *Iqbal*, much less the "specific facts supporting a strong inference of fraud" required by Rule 9(b). *See Twombly*, 550 U.S. at 555; *In re Crude Oil*, 2007 WL 1946553, at *8.

Moreover, Plaintiffs' reliance on group pleading dooms their claims. *See Naughright*, 826 F. Supp. 2d at 689.[2] Indeed, the FAC lacks *any* allegations that either of the Individual Defendants had the ability to influence prices. The limited conclusory allegations that Plaintiffs direct at Defendants as a group are far from the type of allegations that other courts have found sufficient to plead this element. *Compare* FAC ¶ 105 ("Defendants had the ability to cause, and did cause, artificial prices"), *with In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 5108131, at *21 (S.D.N.Y. Sept. 20, 2016) (holding allegations of control of 90% of a related market sufficient to show ability to influence price); *CFTC v. Wilson*, 27 F. Supp. 3d 517, 532 (S.D.N.Y. 2014) (allegations of specific market conditions under which above-market bids could influence market price suffice for pleading stage); *CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 245 (S.D.N.Y. 2012) (allegations of "dominant position" sufficient).

Nowhere in the FAC do Plaintiffs allege that either Individual Defendant had the ability to influence prices in the highly-liquid precious metals futures markets on their own. *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 923 (S.D.N.Y. 2018) ("*London Silver Fixing II*") (describing silver futures markets as "highly liquid"); *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *8 (S.D.N.Y. July 15, 2014) (finding 120 large institutional traders in platinum and palladium futures markets alone). The mere allegation that traders were "active in the markets," FAC ¶ 105, does not remotely

---

[2] By way of example, Plaintiffs allege that "Defendants" manipulated the market for platinum, palladium, silver, and gold futures, *see* FAC ¶ 100, yet the allegations against Bases individually relate solely to trading in the gold market.

5

demonstrate that the Individual Defendants possessed market power sufficient to influence prices. Thus, Plaintiffs fail to adequately plead market manipulation as to the Individual Defendants.

### B. Plaintiffs Do Not Allege That an Artificial Price Existed

Plaintiffs also fail to adequately plead that any artificial price actually existed in the precious metals futures market. An artificial price is one that does not "reflect the forces of supply and demand in the market or do[es] not otherwise comport with contemporaneous prices in comparable markets." *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, No. 11 Md. 2213 (RPP), 2012 WL 6700236, at *12 (S.D.N.Y. Dec. 21, 2012) ("*Silver Futures*"). "When determining if artificial prices exist, a court may consider the underlying commodity's normal market forces, historical prices, supply and demand factors, price spreads, and also the cash market for the commodity at issue." *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 566 (S.D.N.Y. 2016) ("*London Silver Fixing I*").

Here, Plaintiffs do not allege *any* details to support the conclusion that artificial prices were created. Plaintiffs allege only that artificial prices existed and "did not result from the legitimate market information and forces of supply and demand," with no specific factual support. *See, e.g.*, FAC ¶¶ 100, 102. Plaintiffs repeatedly allege in conclusory fashion that they were "deprived of the ability to transact in a lawful market that was free of manipulation" and that they "receive[d] less to buy" or "pa[id] more to purchase" precious metals futures contracts. *See, e.g.*, *id.* ¶¶ 49, 51, 54–55, 58–59, 62–64, 66–68, 70–74, 76, 78–79. But *Iqbal* and *Twombly* prohibit exactly this type of pleading, and such allegations fall far short of satisfying Rule 9(b)'s heightened standard. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 9(b).

Indeed, courts routinely dismiss allegations far more detailed than these bare assertions. For example, one court rejected plaintiffs' attempt to calculate what silver prices ought to have been without defendants' alleged manipulation. *Silver Futures*, 2012 WL 6700236, at *13.

6

Another rejected plaintiffs' allegations of artificial prices based on price fluctuations they "contend[ed] [were] unusual market prices." *In re Rough Rice Commodity Litig.*, No. 11 Civ. 618, 2012 WL 473091, at *6 (N.D. Ill. Feb. 9, 2012).

Courts only accept allegations of artificial price where plaintiffs plead significant and distinctive market impact, such as price swings and volatility supported by meaningful analysis. *See, e.g., In re Platinum & Palladium Antitrust Litig.*, No. 14 Civ. 9391 (GHW), 2017 WL 1169626, at *31 (S.D.N.Y. Mar. 28, 2017) (holding allegations sufficient where plaintiffs "alleged a pattern of downward spikes at and around [defendants' actions]"); *London Silver Fixing I*, 213 F. Supp. 3d at 566–67 (holding plaintiffs' allegations sufficient where they alleged a "7-year pattern of sharp downward price swings accompanied by a spike in highly predictive futures trading and price volatility occurring frequently (and uniquely) around [defendants' actions]"). In contrast, the FAC, like the CCAC, lacks crucial details such as price changes, the initial market prices, the putative artificial prices at which Plaintiffs traded, or any alleged reversion to market prices following the alleged manipulation, much less an analysis of normal market forces or historical prices. *See London Silver Fixing I*, 213 F. Supp. 3d at 566; *see also In re Crude Oil*, 2007 WL 1946553, at *6 (holding under Rule 9(b) that "plaintiff must specify . . . what effect the scheme had on the market" (internal quotation marks omitted)). Because Plaintiffs' market manipulation claim relies only on conclusory allegations of artificial prices, it must be dismissed.

    **C.**     **Plaintiffs Fail to Allege That the Individual Defendants Caused Artificial Prices**

Even if Plaintiffs did sufficiently allege that artificial prices existed—which they have not—they do not adequately allege that the Individual Defendants caused those prices. Causation "requires that a defendant be the proximate cause of the price artificiality." *Silver Futures*, 2012 WL 6700236, at *16. Plaintiffs' conclusory claims that Pacilio and Bases "placed [some number

7

of] spoof orders" and that those orders sent "false supply and demand signals to the market" fail to actually allege that those orders caused an artificial price.[3] *See, e.g.*, FAC ¶¶ 47, 48, 50, 52, 53, 56. These unsupported allegations are nothing more than "naked assertion[s] devoid of further factual enhancement" and thus fail to state a claim upon which relief can be granted. *See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *4 (S.D.N.Y. Mar. 31, 2015) (internal quotation marks omitted); *see also Amaranth II*, 612 F. Supp. 2d at 382–83 ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").[4] As the court concluded in *Silver Futures*, "the 'imagination' required to link" any of the Individual Defendants' trades to Plaintiffs "without corroborating factual allegations as to trades, sworn affidavits, or other evidence is tantamount to impermissible speculation on the basis of sheer possibility." 2012 WL 6700236, at *16.

As with the CCAC, Plaintiffs include no corroborating details supporting their claim that the Individual Defendants proximately caused artificial prices in the precious metals future market, resting instead on unsupported labels and conclusions. *See Twombly*, 550 U.S. at 555. Plaintiffs thus fail to adequately allege that either of the Individual Defendants caused artificial prices.

### D. Plaintiffs Fail to Allege That the Individual Defendants Intended to Manipulate Prices

The FAC also fails to allege that the Individual Defendants intended to cause artificial prices in the precious metals futures market. To adequately plead intent, Plaintiffs must allege that the Individual Defendants "acted with the purpose . . . of causing . . . a price or price trend in the

---

[3] Plaintiffs also allege that "Defendants . . . artificially alter[ed] prices" and "Defendants' . . . spoof orders were designed to—and did—artificially move the prices of precious metals futures contracts." FAC ¶¶ 45, 119. Again, this is impermissible group pleading. *See Naughright*, 826 F. Supp. 2d at 689. Plaintiffs must adequately plead, with particularity, that the Individual Defendants caused artificial prices in the precious metals futures market.

[4] Plaintiffs' contention that the alleged spoofed orders sent "false supply and demand signals" to the market does not mean that those alleged "signals" in fact caused any price movement, let alone an artificial price movement.

8

[particular] market that did not reflect the legitimate forces of supply and demand." *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 598 (S.D.N.Y. 2011) (internal quotation marks omitted). Plaintiffs can plead specific intent by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Amaranth I*, 587 F. Supp. 2d at 530. Where Plaintiffs cannot sufficiently plead motive, they must "identify[] circumstances indicating conscious behavior by the defendant," showing "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Id.* at 529–31. Rule 9(b)'s "significant burden" requires Plaintiffs to allege facts that "give rise to a *strong inference* of scienter." *Amaranth II*, 612 F. Supp. 2d at 383–84 (emphasis in original).

Here again, Plaintiffs try to satisfy this element through group pleading. But Plaintiffs must plead individualized intent—the group allegations of "Defendants'" intent asserted here do not suffice. *See, e.g.*, *In re Vale S.A. Sec. Litig.*, 15 Civ. 9539 (GHW), 2017 WL 1102666, at *32 (S.D.N.Y. March 23, 2017) (dismissing pleadings that "Defendants knew or were reckless" as impermissible group pleadings); *Sullivan v. Barclays PLC*, No. 13 Civ, 2811 (PKC), 2017 WL 685570, at *31 (S.D.N.Y. Feb. 21, 2017) ("[S]ummary references of a collective intent among all 'defendants,' while making allegations as to only three, is unavailing."); *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (group pleading for fraud impermissible).

Plaintiffs also fail to allege either a motive or highly unreasonable conduct giving rise to a strong inference of intent. Rather than provide detailed allegations supporting the required inference, Plaintiffs simply point to sporadic chats and allege in conclusory fashion that the Individual Defendants "engaged in a scheme . . . with the intent to create the false and misleading impression of increased supply and demand in the market." *See* FAC ¶¶ 44, 47, 48, 50, 53, 56, 65,

9

69, 75, 77, 80. But Plaintiffs offer no particular allegations to show that the Individual Defendants had the motive to create an artificial price. Merely characterizing cancelled orders as "spoof orders" does not remotely establish any motive to cause artificial prices and is exactly the type of pleading that Rule 9(b) prevents. *See Amaranth I*, 587 F. Supp. 2d at 539.

Nor is that characterization sufficient to plead highly unreasonable conduct that is an extreme departure from the standard of care. Plaintiffs allege only that the Individual Defendants placed "genuine orders" on opposite sides of the market, and that orders that the Individual Defendants intended to trade were, in fact, executed. *See, e.g.*, FAC ¶¶ 50, 52, 53, 56, 60, 61.[5] But "taking a [trading] position is a legitimate transaction unless there is some additional factor that converts the transaction into manipulation." *Id.* And "entering into a legitimate transaction," even "knowing that it will distort the market[,] is not manipulation." *Id.*[6]

Stripped of their conclusory and unsupported labels, Plaintiffs' factual allegations show only that the Individual Defendants were active traders in the precious metals markets and that certain of their orders were cancelled before they were filled, while other orders were executed.[7] Having had 60 days to address the many deficiencies in their CCAC, Plaintiffs' only new substantive allegation is that "Defendants placed additional spoof orders" including a list of 16 alleged spoof orders, with no indication of which Defendant allegedly entered each order. FAC ¶ 81. This meager addition fails to demonstrate that the Individual Defendants intended to cause

---

[5] Nowhere in the FAC do Plaintiffs allege that the purported "spoof" orders were incapable of execution by other market participants before those orders were allegedly cancelled.
[6] Even if Plaintiffs did sufficiently allege Pacilio's and Bases's intent to affect prices, "the mere intent to affect *prices* is not enough; rather the [plaintiff] must show that Defendants intended to cause *artificial* prices," and simply alleging open-market orders does not support an inference that the orders were not "reflective of fair market value." *CFTC v. Wilson*, No. 13 Civ. 7884, 2018 WL 6322024, at *14–*15 (S.D.N.Y. Nov. 30, 2018) (emphasis in original).
[7] Orders are frequently cancelled for a variety of reasons unrelated to an intent to cause artificial prices. *See CP Stone Fort Holdings, LLC v. Does*, No. 16 Civ. 4991, 2016 WL 5934096, at *6 (N.D. Ill. Oct. 11, 2016) (rejecting Plaintiffs' theory that "if a subset of orders was ultimately cancelled, those orders, in hindsight, must never have been intended to be executed.").

artificial prices. Nor does the FAC's general description of spoofing and its hypothetical market impact save Plaintiffs' claim. *See* FAC ¶¶ 40–43, 105. Such general allegations do not suffice to demonstrate specific intent with respect to the trades at issue, and "only intent . . . can transform a legitimate transaction into manipulation." *See Amaranth I*, 587 F. Supp. 2d at 539. As such, the FAC fails to adequately allege that the Individual Defendants intended to create artificial prices.

### III. Plaintiffs Fail to State a Claim for Manipulative Device

Plaintiffs' allegations of manipulation by manipulative device are likewise inadequate. To state a claim for market manipulation through use of a manipulative device, Plaintiffs must allege that (1) the Individual Defendants "engaged in manipulative acts in connection with the sale of commodities," (2) did so with "scienter," and (3) Plaintiffs suffered "economic loss" from that "fraudulent conduct." *London Silver Fixing I*, 213 F. Supp. 3d at 569–70.[8]

Here, the same pleading failures that plague Plaintiffs' market manipulation claim likewise preclude their manipulative device claim. Plaintiffs fail to sufficiently allege that the Individual Defendants intended to use a manipulative device to create artificial prices or that they suffered economic loss as a result. *See supra* 8–11; Bank Defendants' Memorandum at 18–23. As their manipulation claim fails for these reasons, so too does their manipulative device claim. *See London Silver Fixing II*, 332 F. Supp. 3d at 926 ("Because Plaintiffs' . . . Rule 180.1 [manipulative device] claims rise and fall with Plaintiffs' primary liability theory, those claims fail as well.").[9]

---

[8] While the definition of scienter for manipulative device differs slightly from market manipulation, insofar as it incorporates the definition of recklessness used in Rule 10b-5 securities fraud cases, *see* Prohibition on the Employment, or Attempted Employment, of Manipulative Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41398-404 (July 14, 2011) (codified at 17 C.F.R. pt. 180), courts in the Second Circuit have applied the same intent standard under both provisions, *see Amaranth II*, 612 F. Supp. 2d at 383 (applying the Rule 10b-5 intent standard from *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) to its market manipulation analysis).

[9] As detailed in the Bank Defendants' Memorandum, manipulative device claims can only be based on conduct following Rule 180.1's August 15, 2011 effective date. *London Silver Fixing I*, 213 F. Supp. 3d at 568; *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *2. Plaintiffs thus cannot rely on any allegations prior to August

11

## IV. Plaintiffs Fail to State a Claim for Principal-Agent Liability

Plaintiffs' claim for principal-agent liability also warrants dismissal based on the total absence of allegations in the FAC that anyone is a principal, agent, official, or representative of either Individual Defendant. Plaintiffs allege only that "[e]ach Defendant is liable . . . for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment." FAC ¶ 116. "[A] claim for principal-agent liability requires that the agent was acting in the capacity of an agent when he or she committed the unlawful acts and that the agent's actions were within the scope of his or her employment." *London Silver Fixing I*, 213 F. Supp. 3d at 571. Yet Plaintiffs do not direct their principal-agent allegations at either Individual Defendant specifically. *See Naughright*, 826 F. Supp. 2d at 694 ("Rule 9(b) is not satisfied where the Complaint lumps several defendants together"). Plaintiffs do not allege actions by anyone else for which either Individual Defendant should be held accountable. Moreover, even if they did, as with Plaintiffs' manipulative device claim, their principal-agent liability claim rises or fall with Plaintiffs' primary manipulation theory. *London Silver Fixing II*, 332 F. Supp. 3d at 926. And since Plaintiffs fail to state a claim for relief for manipulation, they likewise fail to state a claim for principal-agent liability.

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims against John Pacilio and Edward Bases should be dismissed with prejudice.

---

15, 2011; they must state a claim based only on their allegations regarding the Individual Defendants' post-August 15, 2011 trades.

12

Dated: May 8, 2020

By: */s/ David H. McGill*

David H. McGill
Erika L. Berman (*pro hac vice forthcoming*)
Geoffrey J. Derrick
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
(202) 664-1900
david.mcgill@kobrekim.com
erika.berman@kobrekim.com
geoffrey.derrick@kobrekim.com

Jonathan D. Cogan
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
jonathan.cogan@kobrekim.com

*Attorneys for John Pacilio*

By: */s/ Evan Cohen* (on consent)

Evan Cohen
David Allen
FINN DIXON & HERLING
6 Landmark Square
Stamford, CT 06901
(203) 325-5000
ECohen@fdh.com
DAllen@fdh.com

*Attorneys for Edward Bases*

13