UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL, BOFA, AND MORGAN STANLEY SPOOFING LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Master Docket No. 19-cv-6002 (LJL) |

**DEFENDANT MORGAN STANLEY & CO. LLC'S
SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Emma S. Gardner
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
scott.musoff@skadden.com
emma.gardner@skadden.com

Jonathan L. Marcus (admitted *pro hac vice*)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7596
Facsimile: (202) 661-0596
jonathan.marcus@skadden.com

*Attorneys for Defendant Morgan Stanley & Co. LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................4

    A.    Plaintiffs' CEA Claims Must Be Pleaded with Particularity. ..................................4

    B.    Plaintiffs Fail to Plead a CEA Price Manipulation Claim Against Morgan Stanley. ..................................................................................................................6

        1.    Plaintiffs Fail to Allege that Morgan Stanley Had the Ability to Affect Prices. ...........................................................................................6

        2.    Plaintiffs Fail to Allege the Existence of Artificial Prices. .........................7

        3.    Plaintiffs Fail to Allege that Morgan Stanley Caused Artificial Prices. .........................................................................................................8

        4.    Plaintiffs Fail to Allege Facts that Give Rise to a Strong Inference of Scienter. ...............................................................................................9

    C.    Plaintiffs Fail to Plead a CEA Manipulative Device Claim Against Morgan Stanley. ................................................................................................................10

    D.    Plaintiffs Fail to State a Claim for Principal-Agent Liability Under the CEA. .......................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Amaranth Natural Gas Commodities Litigation*,
  730 F.3d 170 (2d Cir. 2013) ............................................................................................6

*In re Amaranth Natural Gas Commodities Litigation*, ("*Amaranth I*")
  587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ........................5

*In re Amaranth Natural Gas Commodities Litigation*, ("*Amaranth II*")
  612 F. Supp. 2d 376 (S.D.N.Y. 2009), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ...............5, 9, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................5

*CFTC v. Parnon Energy, Inc.*,
  875 F. Supp. 2d 233 (S.D.N.Y. 2012) .............................................................................9

*CFTC v. Wilson*,
  No. 13 Civ. 7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ...........................9

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litigation*,
  No. 11-Md-2213 (RPP), 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ..............7, 8, 9, 10

*Crossword Magazine Inc. v. Times Books*,
  No. 96 CV 4550 (SJ), 1997 WL 227998 (E.D.N.Y. May 5, 1997) ....................................7

*In re Crude Oil Commodity Litigation*,
  No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ..................4, 5, 10

*DeAngelis v. Corzine*,
  17 F. Supp. 3d 270, 282 (S.D.N.Y. 2014) ........................................................................4

*Kalnit v. Eichler*,
  264 F.3d 131, 142 (2d Cir. 2001) ...................................................................................11

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, ("*LIBOR I*")
  935 F. Supp. 2d 666 (S.D.N.Y. 2013), *vacated and remanded on other grounds
  sub nom. Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016) ...............5, 6, 9

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, ("*LIBOR II*")
   962 F. Supp. 2d 606 (S.D.N.Y. 2013) .................................................................................... 6

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016) ............................................................................. 7, 10

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018) ................................................................................ 11

## STATUTES

CEA Section 2, 7 U.S.C. § 2 ............................................................................................... 4, 11

CEA Section 6, 7 U.S.C. § 9 ............................................................................................... 4, 10

CEA Section 9, 7 U.S.C. § 13 .................................................................................................. 4

CEA Section 22, 7 U.S.C. § 25 ................................................................................................ 6

## RULES

Federal Rules of Civil Procedure 8(a) ...................................................................................... 5

Federal Rules of Civil Procedure 9(b) .................................................................................. 1, 4

Federal Rules of Civil Procedure 12(b)(6) ............................................................................... 1

## REGULATIONS

CFTC Regulation 17 C.F.R. pt. 180 ....................................................................................... 11

CFTC Regulation 180.1, 17 C.F.R. § 180.1 ............................................................................. 3

Federal Register 76 Fed. Reg. 41,398 .................................................................................... 11

Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") respectfully submits this supplemental memorandum of law in support of its motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("Amended Complaint" or "FAC") filed in the above-captioned actions under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint is virtually identical to the Consolidated Class Action Complaint they filed on November 12, 2019 (the "Consolidated Complaint").[1] In particular, the Amended Complaint, like the Consolidated Complaint, is patently deficient to state a claim against Morgan Stanley. Despite five months passing from the filing of their Consolidated Complaint, during which they saw all the arguments set forth in the original motions to dismiss[2] and requested additional time to amend their Consolidated Complaint,[3] Plaintiffs allege *no* new facts and offer *no* additional details regarding their allegations against Morgan Stanley. The Amended Complaint should accordingly be dismissed with prejudice.

Plaintiffs allege that Merrill Lynch Commodities, Inc. ("MLCI"), Bank of America Corporation ("BAC"), Morgan Stanley, Edward Bases ("Bases"), John Pacilio ("Pacilio"), and eighteen John Does (collectively, the "Defendants") manipulated the prices of precious metals futures contracts and options traded on the New York Mercantile Exchange and the Commodity Exchange, Inc. ("COMEX") from January 1, 2007, through December 31, 2014, (the "Class Period") in violation of the Commodity Exchange Act ("CEA") and common law. (FAC ¶ 1.) Plaintiffs allege that Defendants accomplished this manipulation through

---

[1] *See* Dkt. 27.

[2] *See* Dkt. 34, Dkt. 36, and Dkt. 38.

[3] *See* Dkt. 44.

"spoofing"—placing orders that Defendants allegedly intended to and did cancel before execution "in order to send false and illegitimate supply and demand signals to the market." (FAC ¶ 2.)

Morgan Stanley fully concurs with the other Defendants that the Amended Complaint should be dismissed in its entirety as to all Defendants.[4] The Amended Complaint also suffers from additional glaring flaws with respect to the allegations of Morgan Stanley's CEA violations, which are addressed in this separate memorandum. The Amended Complaint alleges spoofing by precious metals traders Bases and Pacilio. Bases was a trader employed by MLCI. (*See* FAC ¶ 21.) He was never employed by Morgan Stanley. Pacilio was a trader employed by MLCI from approximately October 2007 until approximately June 2011. (FAC ¶ 22.) He was employed by Morgan Stanley from approximately July 2011 until approximately May 2019. (FAC ¶ 22.)

Although Morgan Stanley is named as a defendant in the Amended Complaint, Plaintiffs' focus lies elsewhere. Plaintiffs allege CEA violations starting on January 1, 2007, over four years before Pacilio was employed by Morgan Stanley, and over *seven years* before the first date on which Plaintiffs allege spoofing with respect to Morgan Stanley. (*See* FAC ¶¶ 22, 65.) During the nearly 3,000-day Class Period, Plaintiffs allege just five dates on which Pacilio supposedly placed spoof orders in the precious metals futures markets while employed at Morgan Stanley: January 24, 2014 (FAC ¶ 65); February 18, 2014 (FAC ¶ 69); February 28,

---

[4] Morgan Stanley, MLCI and BAC have filed a Joint Notice of Motion (Dkt. 54) and Joint Memorandum of Law in Support of their Motion to Dismiss (the "Joint Motion to Dismiss") (Dkt. 55). To avoid redundancy, this memorandum adopts the Background section of the Joint Motion to Dismiss.

2014 (FAC ¶ 75); April 17, 2014 (FAC ¶ 77); and October 6, 2014 (FAC ¶ 80).[5]  Plaintiffs' allegations with respect to these dates follow a predictable, conclusory pattern: a boilerplate recitation of the market Pacilio allegedly manipulated, and the approximate number and price of the contracts he purchased or sold.  The allegations do not contain any statements from Pacilio or any details as to how the alleged spoof orders benefitted Pacilio or Morgan Stanley, the time of the alleged spoofing in relation to the time Plaintiffs supposedly bought and sold futures contracts or options, contract prices before or after the alleged spoofing, or the characteristics of the relevant markets.  Rather, for each date, Plaintiffs merely allege that Pacilio "placed the spoof orders, even though he did not intend for the orders to be executed when he placed them, in order to convey false supply and demand signals to the market."  (*See* FAC ¶¶ 65, 69, 75, 77, 80.)

        Plaintiffs' allegations rely heavily on the Non-Prosecution Agreement ("NPA") entered into by MLCI with the U.S. Department of Justice.  But Morgan Stanley is not a party to the NPA and the conduct set forth therein has nothing to do with Morgan Stanley.  The NPA alleges no wrongdoing by Pacilio while he was employed by Morgan Stanley and, thus, cannot be used as a basis for Plaintiffs' claims against Morgan Stanley.  Plaintiffs also rely on statements allegedly made by Pacilio in early 2011 during his employment with MLCI (*see, e.g.*, FAC ¶ 50), which similarly cannot provide a basis for the claims against Morgan Stanley.

---

[5]    Plaintiffs have added a threadbare chart with sixteen additional dates that they allege that spoofing occurred.  *See* FAC ¶ 81.  None of these dates involve conduct by Pacilio during his employment at Morgan Stanley.  While the chart does not identify which trader placed each alleged spoof order, fourteen of the sixteen dates are before July 2011, the date that Plaintiffs allege Pacilio began working at Morgan Stanley.  *See* FAC ¶ 22.  And the two remaining dates address trades allegedly placed by Defendant Bases.  *See* Second Superseding Indictment ¶ 16, *United States v. Bases*, No. 18 Cr. 48 (N.D. Ill. Filed on Feb. 27, 2020), ECF No. 244.  Although Defendants do not concede the truth of any allegations in the criminal proceedings, to the extent Plaintiffs rely on such pleadings they cannot ignore the allegations that directly undermine their claims.

Plaintiffs are wholly unable to satisfy the pleading requirements for the CEA claims that they assert against Morgan Stanley. When the pejorative labels and conclusory allegations are eliminated from the Amended Complaint, nothing remains to support an inference that artificial prices in fact existed, that Morgan Stanley actually caused artificial prices, or that it had the ability and specific intent to create them. Accordingly, in addition to the fatal flaws in the Amended Complaint's allegations against all of the Defendants, *see* Joint Motion to Dismiss, the CEA claims against Morgan Stanley in particular should be dismissed.

## ARGUMENT

### THE AMENDED COMPLAINT FAILS TO PLEAD CEA VIOLATIONS WITH RESPECT TO MORGAN STANLEY

Plaintiffs assert two types of primary claims against Morgan Stanley under the CEA: (1) a price manipulation claim under Sections 6(c) and 9(a)(2), 7 U.S.C. §§ 9, 13(a)(2) (Claim One, FAC ¶¶ 99-108); and (2) a manipulative and deceptive device claim under Section 6(c)(1), 7 U.S.C. § 9(1), and Commodity Futures Trading Commission ("CFTC") Regulation 180.1(a), 17 C.F.R. § 180.1(a) (Claim Two, FAC ¶¶ 109-14). As discussed below, Plaintiffs fail adequately to plead both claims. Consequently, Plaintiffs' secondary CEA claim for principal-agent liability under CEA Section 2(a)(1), 7 U.S.C. § 2(a)(1) (Claim Three, FAC ¶¶ 115-117), must also be dismissed.

**A.     Plaintiffs' CEA Claims Must Be Pleaded with Particularity.**

Plaintiffs alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[6] Because both CEA claims

---

[6] Where, as here, there are multiple defendants accused of wrongdoing, Rule 9(b) requires that Plaintiffs allege "the fraud perpetrated by *each* defendant." *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. Sept. 30, 2018) (emphasis added); *see also DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 282 (S.D.N.Y. 2014) (plaintiffs cannot allege "guilt by association"). In violation of Rule 9(b), in

4

are premised on allegations that Defendants intentionally transmitted "false and illegitimate supply and demand signals to the market" (FAC ¶ 2, *see also* FAC ¶¶ 44, 47-48, 50, 52-53, 56-57, 60-61, 65, 69, 75, 77, 80, 100), they "sound in fraud and thus must be pled with particularity." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR I*), 935 F. Supp. 2d 666, 714 (S.D.N.Y. 2013), *vacated and remanded on other grounds sub nom. Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016); *see also In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007) (finding that allegations that defendants "created [a] false impression" and "misled the market with regard to supply and demand" sounded in fraud (citation omitted)); *cf. In re Amaranth Nat. Gas Commodities Litig.* (*Amaranth I*), 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (noting that any "complaint that alleges manipulation of commodities prices must satisfy Rule 9(b)"), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

In asserting a price manipulation claim, a plaintiff must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market." *In re Crude Oil*, 2007 WL 1946553, at *6 (citation omitted). Plaintiffs' complaint must be "backed by specific facts supporting a strong inference of fraud." *Id.* at *8 (citation omitted). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *In re Amaranth Nat. Gas Commodities Litig.* (*Amaranth II*), 612 F. Supp. 2d 376, 382-83 (S.D.N.Y. 2009), *aff'd*, 587 F. Supp. 170 (2d Cir. 2013). As explained below, Plaintiffs have failed to meet their burden.[7]

---

numerous instances throughout the Amended Complaint, Plaintiffs treat all the Defendants as one and the same. *See, e.g.*, FAC ¶¶ 44-46, 49, 51, 54-56, 59, 62-64, 66-68, 70-74, 76, 78-79, 81-82. Indeed, in a chart purporting to show sixteen different dates where allegedly "Defendants placed additional spoof orders during the Class Period," Plaintiffs do not identify which defendant engaged in the alleged spoofing for any of the dates. *See* FAC ¶ 81.

[7] Even if Rule 9(b) did not apply to Plaintiffs' CEA claims, Plaintiffs' claims fail under even the more relaxed pleading requirements of Federal Rule of Civil Procedure 8(a). To survive a motion to dismiss, a complaint

### B. Plaintiffs Fail to Plead a CEA Price Manipulation Claim Against Morgan Stanley.

To state a cognizable claim for price manipulation, a plaintiff must adequately plead four elements: "(1) Defendants possessed an ability to influence market prices; (2) an artificial price existed; (3) Defendants caused the artificial prices; and (4) Defendants specifically intended to cause the artificial price." *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013) (citation omitted). If one of these elements is not pleaded sufficiently, then the claim as a whole must fail.[8] As explained below, Plaintiffs fail to plead *any* of the elements adequately.

#### 1. Plaintiffs Fail to Allege that Morgan Stanley Had the Ability to Affect Prices.

First, Plaintiffs must plead facts adequate to demonstrate that Morgan Stanley had the ability to influence the price of the instruments at issue. *See LIBOR I*, 935 F. Supp. 2d at 715. Plaintiffs plead *no* facts in their Amended Complaint to satisfy this element. Plaintiffs offer no facts to establish that Morgan Stanley had the ability to influence prices. They plead no facts regarding the size or liquidity of the markets for the products that they allege were manipulated. They do not discuss market conditions or the size of Morgan Stanley's positions in the markets. Instead, they assert in conclusory fashion that Morgan Stanley "had the ability to

---

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs merely offer "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Id.* (citation omitted). Such pleading is insufficient as a matter of law under either standard.

[8] As set forth more fully in the Joint Motion to Dismiss, Plaintiffs' claims also fail because they do not adequately plead actual damages as required under Section 22 of the CEA, 7 U.S.C. §25. The Amended Complaint must allege that Plaintiffs "engaged in a transaction at a time during which prices were artificial as a result of [Morgan Stanley's] alleged . . . manipulative conduct," and "that the artificiality was *adverse to their position*." *In re LIBOR-Based Fin. Instruments Antitrust Litig.* (*LIBOR II*), 962 F. Supp. 2d 606, 622 (S.D.N.Y. 2013) (emphasis added). Here, Plaintiffs fail to identify, let alone with particularity, *any* transaction at a price that was higher or lower than it should have been due to Morgan Stanley's conduct. Moreover, on one of the five dates during which Pacilio supposedly placed spoof orders while employed at Morgan Stanley, Plaintiffs do not even allege that any of them traded futures or options. *See* FAC ¶ 80.

6

cause" artificial prices because Morgan Stanley was "active in the [precious metals] markets." (*See* FAC ¶ 105.)[9] These bare and conclusory allegations are insufficient to state a claim. *See Crossword Magazine, Inc. v. Times Books*, No. 96 CV 4550 (SJ), 1997 WL 227998, at *2 (E.D.N.Y. May 5, 1997) ("Plaintiffs . . . have pleaded no facts indicating that [defendant] has the power to fix prices or exclude competition in the alleged relevant market.").

### 2. Plaintiffs Fail to Allege the Existence of Artificial Prices.

Second, Plaintiffs must plead facts sufficient to establish that an artificial price existed. An artificial price is a price that does not "reflect the forces of supply and demand in the market or [does] not otherwise comport with contemporaneous prices in comparable markets." *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.* (*Silver Futures*), No. 11 Md. 2213 (RPP), 2012 WL 6700236, at *12 (S.D.N.Y. Dec. 21, 2012). In determining whether an artificial price exists, a court may consider "the underlying commodity's normal market forces, historical prices, supply and demand factors, price spreads, and also the cash market for the commodity at issue." *Id.* at *12.[10]

Here, Plaintiffs baldly assert that artificial prices existed (*see, e.g.*, FAC ¶ 100), but offer no factual allegations to support their claim. At no point do they allege facts showing a change in market prices during the period of alleged spoofing or a reversion to market prices after Morgan Stanley ceased its alleged spoofing. They plead no facts that speak to the forces in

---

[9] While Plaintiffs note the volume and price of the spoof orders they allege Pacilio placed during his employment with Morgan Stanley (*see* FAC ¶¶ 65, 69, 75, 77, 80), allegations that a defendant had the ability to place trades in particular volumes and at particular prices do not indicate whether the defendant had the ability to *influence* market prices.

[10] For example, in *In re London Silver Fixing, Ltd., Antitrust Litigation*, the court found that the plaintiffs pled the existence of artificial prices where they alleged "a dysfunction in silver pricing dynamics . . . reflected in a 7-year pattern of sharp downward price swings accompanied by a spike in highly predictive futures trading and price volatility occurring frequently (and uniquely) around the Silver Fixing," and the defendants "offer[ed] no plausible market-based explanation for this phenomenon." 213 F. Supp. 3d 530, 566-67 (S.D.N.Y. 2016).

the markets at issue, "historical prices, supply and demand factors, price spreads," or that the prices in the relevant markets during the alleged manipulation did not "comport with contemporaneous prices in comparable markets." *Silver Futures*, 2012 WL 6700236, at *12. Plaintiffs instead merely repeat conclusory assertions that spoof orders were placed, and that Plaintiffs were therefore deprived of the opportunity to trade in a market free from manipulation. (*See* FAC ¶¶ 66-68, 70-74, 76, 78-79, 82.)

For example, Plaintiffs allege that on April 17, 2014: (1) Pacilio, while employed by Morgan Stanley, "manipulated the market" by placing spoof orders to sell approximately 100 COMEX silver futures contracts at a price of $19.635; (2) on the same day, Plaintiff Gamma purchased and sold COMEX silver futures contracts and options on gold futures contracts; and (3) as a result of Pacilio's spoofing, Plaintiff Gamma was "deprived of the ability to transact in a lawful market that was free of manipulation." (FAC ¶¶ 77-78.) Yet Plaintiffs do not allege that the price of the silver futures contracts (let alone the price of options on gold futures) changed during the period of the alleged spoofing from what it was before or after that period. Instead, they state in entirely conclusory fashion that the alleged manipulation forced them to "pay more to purchase" or "receive less to sell" the contracts. Plaintiffs' allegations with respect to each of the other four instances of alleged spoofing by Morgan Stanley are deficient for the same reasons.

### 3. Plaintiffs Fail to Allege that Morgan Stanley Caused Artificial Prices.

Third, Plaintiffs must plead facts sufficient to show that Morgan Stanley was the proximate cause of any alleged price artificiality. *See Silver Futures*, 2012 WL 6700236, at *16. Even if Plaintiffs had adequately pleaded that artificial prices existed (which they have not), Plaintiffs offer no allegations to support *how* Morgan Stanley's trading activity caused an

8

artificial price.[11] Instead, their theory of liability rests on pure speculation and the entirely circular allegation that Morgan Stanley "cause[d]" artificial prices because it was "aware of the effects of spoofing." (FAC ¶ 105.) That is insufficient. *Silver Futures*, 2012 WL 6700236, at *16 (ruling that "the 'imagination' required to link [defendant's large market position to the declining price] without corroborating factual allegations as to trades, sworn affidavits, or other evidence is tantamount to impermissible speculation on the basis of sheer possibility").

### 4. Plaintiffs Fail to Allege Facts that Give Rise to a Strong Inference of Scienter.

Finally, Plaintiffs must allege that each Defendant specifically intended to cause an artificial price. *See CFTC v. Wilson*, No. 13 Civ. 7884 (RJS), 2018 WL 6322024, at *15 (S.D.N.Y. Nov. 30, 2018). Here too the Amended Complaint falls well short as to Morgan Stanley. With respect to commodities fraud, Plaintiffs must allege facts that "give rise to a *strong inference* of scienter." *Amaranth II*, 612 F. Supp. 2d at 384; *see also LIBOR I*, 935 F. Supp. 2d at 714. The defendants must have acted with "the *purpose or conscious object* of causing or effecting a price . . . in the market that did not reflect the legitimate forces of supply and demand." *CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 249 (S.D.N.Y. 2012) (citation omitted) (emphasis added). Merely intending to affect prices, or knowing that conduct would influence prices, is insufficient. *See Wilson*, 2018 WL 6322024, at *15. Therefore, Plaintiffs must plead facts that demonstrate that Morgan Stanley had the motive and opportunity to cause artificial prices, or that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Amaranth II*, 612 F. Supp. 2d at 383. Plaintiffs here do neither.

---

[11]  For instance, Plaintiffs offer no evidence of "fluctuations in the market prices," "bounce backs," or "times at which the alleged trades occurred," which could bear on the plausibility of Plaintiffs' claims that Morgan Stanley caused artificial prices. *See Silver Futures*, 2012 WL 6700236, at *18.

9

Plaintiffs cite MLCI's admissions in its NPA that it intended to "create the false and misleading impression of increased supply and demand in the market" to "induce other market participants to trade at times, prices and quantities that they [otherwise] would not have." (FAC ¶ 44.) But Plaintiffs do not plead any similar facts—indeed, *any* facts—relating to Morgan Stanley's intent, let alone facts sufficient to establish a "strong" inference of intent.[12] Instead, Plaintiffs merely allege that all Defendants manipulated the prices of precious metal futures contracts "to financially benefit their trading positions at the expense of other investors." (FAC ¶ 2.) But Plaintiffs fail to explain *how* Morgan Stanley benefitted financially from the alleged spoofing. In any event, a "generalized [profit] motive" is "insufficient to show intent," because it "could be imputed to any corporation with a large market presence in any commodity market." *In re Crude Oil*, 2007 WL 1946553, at *8.

C.  **Plaintiffs Fail to Plead a CEA Manipulative Device Claim Against Morgan Stanley.**

The manipulative device claim against Morgan Stanley under CEA Section 6(c)(1), 7 U.S.C. § 9(1), and CFTC Regulation 180.1(a) (*see* FAC ¶¶ 109-14) must also be dismissed. To plead a manipulative device claim, Plaintiffs must allege that Defendants (i) "engaged in manipulative acts in connection with the sale of commodities," (ii) acted with "scienter," and (iii) caused Plaintiffs to suffer an "economic loss" through the "fraudulent conduct." *In re London Silver Fixing*, 213 F. Supp. 3d at 569-70. Here, the Amended Complaint has not sufficiently alleged that Pacilio, while employed at Morgan Stanley, engaged in manipulative conduct in the precious metals futures markets (*supra* at § B.1-B.3) or that he acted

---

[12] *See, e.g.*, *Silver Futures*, 2012 WL 6700236, at *11-12 (scienter not adequately pled where the complaint contained "no reference to specific communications between the Defendants about any specific plan to cause artificial prices," plaintiffs made "general and conclusory allegation[s]" about the defendant bank's "unusual" trading activities, and allegations "show[ed] only that [the defendant bank] participated in trades on the COMEX silver futures markets" on a particular day).

with the requisite scienter (*supra* at § B.4).[13] And Plaintiffs have set forth no facts to adequately plead loss causation. (*See* Joint Motion to Dismiss at Part III and note 8, *supra*). Indeed, Plaintiffs do not even plead that they were trading on one of the days that they allege Pacilio placed spoof orders (FAC ¶ 80). For the other four days, they do not identify any particular transaction by any Plaintiff that was adversely affected by the alleged spoofing (FAC ¶¶ 66-68, 70-74, 76, 78-79, 81-82). Plaintiffs also offer no accounting of any actual losses suffered.

**D.     Plaintiffs Fail to State a Claim for Principal-Agent Liability Under the CEA.**

Plaintiffs allege that Morgan Stanley is liable for the "manipulative acts of [its] agents, representatives, and/or other persons acting for them in the scope of their employment" under CEA Section 2(a)(1), 7 U.S.C. § 2(a)(1) (Claim Three, FAC ¶¶ 115-117). Failure to state a claim for a primary CEA violation against a defendant requires dismissal of the principal-agent liability claim. *See, e.g.*, *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 926 (S.D.N.Y. 2018). Thus, Plaintiffs' principal-agent liability claim as to Morgan Stanley must also be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' CEA claims against Morgan Stanley with prejudice.

---

[13] Scienter is defined slightly differently under the price manipulation statute and the manipulative device rule, but the pleading burden is essentially the same. Scienter under the manipulative device rule incorporates the definition of "recklessness" used in securities fraud cases. *See* Prohibition on the Employment, or Attempted Employment, of Manipulative Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,404 (July 14, 2011) (codified at 17 C.F.R. pt. 180). An inference of scienter under either provision requires "motive and opportunity" or "strong circumstantial evidence of conscious misbehavior or recklessness." *In re Amaranth II*, 612 F. Supp. 2d at 383 (price manipulation statute); *see Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (describing securities fraud "recklessness" standard).

11

Dated: New York, New York
       May 8, 2020

                          Respectfully submitted,

                          /s/ Scott D. Musoff
                          Scott D. Musoff
                          Emma S. Gardner
                          SKADDEN, ARPS, SLATE, MEAGHER &
                            FLOM LLP
                          One Manhattan West
                          New York, NY 10001-8602
                          Telephone: (212) 735-3000
                          Facsimile: (212) 735-2000
                          scott.musoff@skadden.com
                          emma.gardner@skadden.com

                          Jonathan L. Marcus (admitted *pro hac vice*)
                          SKADDEN, ARPS, SLATE, MEAGHER &
                            FLOM LLP
                          1440 New York Avenue, N.W.
                          Washington, D.C. 20005
                          Telephone: (202) 371-7596
                          Facsimile: (202) 661-0596
                          jonathan.marcus@skadden.com

                          *Attorneys for Defendant Morgan Stanley & Co. LLC*