UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL, BOFA, AND MORGAN STANLEY SPOOFING LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Master Docket No. 19-cv-6002 (LJL)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHN PACILIO AND EDWARD BASES'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs Fail to Allege Admissions by Bases and Pacilio ................................... 2

    II.   Plaintiffs Fail to State a Claim for Market Manipulation ..................................... 2

    III.  Plaintiffs Concede and Fail to Adequately Plead Their Remaining Claims .......... 6

CONCLUSION ............................................................................................................................... 6

# TABLE OF AUTHORITIES

*CFTC v. Amaranth Advisors, LLC*,
  554 F. Supp. 2d 523 (S.D.N.Y. 2008) ................................................................................ 6

*CFTC v. Parnon Energy Inc.*,
  875 F. Supp. 2d 233 (S.D.N.Y. 2012) ................................................................................ 4

*CFTC v. Wilson*,
  No. 13 Civ. 7884, 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ...................................... 5

*Friedl v. City of New York*,
  210 F.3d 79 (2d Cir. 2000) .................................................................................................. 2

*In re Amaranth Natural Gas Commodities Litigation*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................................ 6

*In re Amaranth Natural Gas Commodities Litigation*,
  612 F. Supp. 2d 376 (S.D.N.Y. 2009) ................................................................................ 5

*In re Anthony J. DiPlacido*,
  CFTC No. 01-23, 2008 WL 4831204 (CFTC Nov. 5, 2008) ............................................. 6

*In re Commodity Exchange, Inc., Gold Futures & Options Trading Litigation*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................................ 5–6

*In re Commodity Exchange, Inc., Silver Futures & Options Trading Litigation*,
  No. 11 Md. 2213 (RPP), 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ............................ 4

*In re Crude Oil Commodity Litigation*,
  No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) .......................... 3

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
  213 F. Supp. 3d 530 (S.D.N.Y. 2016) ................................................................................ 3

*In re London Silver Fixing, Ltd., Antitrust Litigation*,
  332 F. Supp. 3d 855 (S.D.N.Y. 2018) ................................................................................ 6

*In re Platinum & Palladium Antitrust Litigation*,
  No. 1:14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ......................... 2

*Jackson v. Federal Express*,
  766 F.3d 189 (2d Cir. 2014) .............................................................................................. 6

*Levy v. BASF Metals Ltd.*,
  917 F.3d 106 (2d Cir. 2019) .............................................................................................. 1

*Myun-Uk Choi v. Tower Research Capital LLC*,
    165 F. Supp. 3d 42 (S.D.N.Y. 2016) ....................................................................................... 2

*Naughright v. Weiss*,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011) ..................................................................................... 4

*Sonterra Capital Master Fund Ltd., v. Credit Suisse Group AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017) ..................................................................................... 5

*Sullivan v. Barclays PLC*,
    No. 13 Civ. 2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ............................... 4, 6

*United States v. Ghavami*,
    No. 10 CR 1217 KMW, 2012 WL 2878126 (S.D.N.Y. July 13, 2012) .................................. 2

*United States v. Rubin/Chambers, Dunhill Insurance Services*,
    831 F. Supp. 2d 779 (S.D.N.Y. 2011) ..................................................................................... 2

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..................................................................................... 3

**PRELIMINARY STATEMENT**

Plaintiffs' omnibus memorandum contains a key concession fatal to their claims. Specifically, Plaintiffs concede that "spoof" orders do not constitute false statements, thereby foreclosing the central theory of their case: namely, that the alleged spoof orders reflected false representations of supply and demand that led to artificial prices. *See* Pls.' Omnibus Mem. Of Law in Opp'n to Defs.' Mots. To Dismiss the First Am. Consolidated Class Action Compl. ("Opp."), ECF 64, at 25–26. Because the operative complaint offers no alternative theory of manipulation, the Court should dismiss Plaintiffs' claims with prejudice.

Even without this fatal admission, the complaint fails to state a claim. Plaintiffs continue to improperly rest their claims on conclusions from consent orders and agreements pertaining to other defendants and group pleading, rather than pleading specific allegations for each defendant and each element of their claim. Indeed, despite having access to public market data and their own trading records, Plaintiffs fail to include any detailed factual allegations supporting the bare conclusions that they offer. The scant allegations they do offer do not even approach the level of detail offered in the *London Silver Fixing* complaint, which the court dismissed even after the plaintiffs included the sort of trading and market data that Plaintiffs have failed to muster here. And since their manipulative device claims rest on the same allegations, they too fail. Finally, Plaintiffs abandon their principal-agent liability claims against Bases and Pacilio by failing to defend them. For this reason, too, Plaintiffs' claims against Bases and Pacilio must be dismissed.[1]

---

[1] Bases and Pacilio join the arguments set forth in the Bank Defendants' Reply. They also respectfully refer the Court to Second Circuit authority on the issue of timeliness in *Levy v. BASF Metals Ltd.*, 917 F.3d 106 (2d Cir. 2019).

## ARGUMENT

### I. Plaintiffs Fail to Allege Admissions by Bases and Pacilio

The Court should not accept Plaintiffs' invitation to "consider Merrill Lynch's and Bank of America's admissions as direct evidence that Bases and Pacilio intended to cause artificial prices." Opp. at 31 n.8. The only relevant allegations are those in the FAC against Bases and Pacilio, not allegations made for the first time in Plaintiffs' briefing. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (courts may not rely on "factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss" (internal citation omitted)). Moreover, Bases and Pacilio cannot be bound by another entity's admissions, particularly as to their own intent. *See United States v. Ghavami*, No. 10 CR 1217 KMW, 2012 WL 2878126, at *9 (S.D.N.Y. July 13, 2012) (admitting NPA only as evidence of the "affecting a financial institution" element of criminal wire fraud and not as evidence of guilt); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 785 (S.D.N.Y. 2011) (same). Indeed, while courts must "accept[] as true the allegations that these statements [in the NPA] were made," they cannot "impute [the] conduct" to other defendants. *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *6 n.5 (S.D.N.Y. Mar. 28, 2017). Plaintiffs' NPA allegations thus fail to support their claims against Bases and Pacilio.

### II. Plaintiffs Fail to State a Claim for Market Manipulation

**Existence of Artificial Prices.** Plaintiffs' admission that an above or below market order the party intends to cancel before execution "does not constitute a false or misleading statement" eviscerates their theory that these orders reflected false statements of supply and demand that could lead to artificial prices. Opp. at 25–26 (quoting *Myun-Uk Choi v. Tower Research Capital LLC*, 165 F. Supp. 3d 42, 47–48 (S.D.N.Y. 2016)). If the orders here were not false or misleading

statements, as Plaintiffs have conceded, then they were accurate reflections of supply and demand and could not have created artificial prices.[2]

Furthermore, in assessing allegations of artificial price, courts look for facts absent from Plaintiffs' complaint, such as "the underlying commodity's normal market forces, historical prices, supply and demand factors, price spreads, and also the cash market for the commodity at issue." *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 566 (S.D.N.Y. 2016). Defendants have not "engrafted" these requirements, Opp. at 28, and they do not control this data—Plaintiffs have full access to their own trading data and broader public market data. *See* CME DataMine, https://www.cmegroup.com/market-data/datamine-historical-data.html.[3]

In seeking to avoid the application of Rule 9(b)'s heightened pleading standard to their allegations, *see* Opp. at 25, Plaintiffs ignore that Rule 9(b) "is cast in terms of the conduct alleged." *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007). Plaintiffs allege that Bases and Pacilio manipulated the market through sending "false and illegitimate supply and demand signals." *E.g.*, FAC ¶¶ 47–48, 52–53, 60, 65. Such allegations sound in fraud and must be alleged with particularity. Defs.' Pacilio and Bases's Mem. Of Law in Support of Mot. To Dismiss the First Am. Consolidated Class Action Compl. ("Mot."), ECF 57, at 3. In any event, Plaintiffs neither meet Rule 8(a)'s requirements nor the relaxed 9(b) standard they advance. *See* Opp. at 26. Plaintiffs include no factual support for their conclusion that artificial prices existed, much less the type of market details upheld as sufficient to allege

---

[2] Plaintiffs also concede that spoofing can occur without any impact on prices. *See* Opp. at 9 ("The CFTC can regulate [spoofing], even if it has no effect whatsoever on market prices and was never intended to."). For this reason, too, general allegations that Bases and Pacilio "spoofed" the market do not support the existence of artificial prices.
[3] The Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," including "information publicly announced on certain…websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015).

3

artificial price in other cases.[4]  FAC ¶¶ 100, 102; Mot. at 7.  As such, Plaintiffs fail to allege existence of artificial prices.

**Ability to Influence Prices.**  Rather than identify any well-pleaded allegations that Bases and Pacilio had the ability to influence market prices, Plaintiffs rely on the bare allegation that "Defendants had the ability to cause, and did cause, artificial prices" to satisfy this element.  FAC ¶ 105.  Yet this conclusory, group-pleaded allegation lacks any facts supporting that ability.  *Cf. CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 245 (S.D.N.Y. 2012) (holding allegations of defendants' "dominant position" sufficient).[5]  Plaintiffs assert that by alleging *some* specific individual conduct, they may group plead their claim.  Opp. at 31 n.9.  But that is not the standard, particularly for claims involving allegations of intent.  *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011); *see also Sullivan v. Barclays PLC*, No. 13 Civ. 2811 (PKC), 2017 WL 685570, at *31 (S.D.N.Y. Feb. 21, 2017).  Bases and Pacilio neither advocate for a "fact-intensive determination" nor argue that the highly-liquid precious metals market cannot be manipulated.  *See* Opp. at 27.  They merely point out that Plaintiffs failed to allege any facts supporting the inference that Bases and Pacilio had the ability to manipulate that highly-liquid market, as required for a manipulation claim.

**Causation of Artificial Prices.**  While Plaintiffs need not definitively prove causation at this stage, bare assertions and group pleadings do not suffice.  And despite Plaintiffs' contention, *In re Commodity Exchange, Inc., Silver Futures & Options Trading Litigation*, No. 11 Md. 2213 (RPP), 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) is highly instructive as it involved the same

---

[4] As detailed above, admissions made by other parties do not bind Bases and Pacilio.  Neither those statements nor any so-called "admissions" from chats provide sufficient basis to conclude artificial prices in fact existed.
[5] Plaintiffs cite allegations that Bases and Pacilio caused artificial prices as sufficient to plead ability affect prices. Opp. at 27.  But this approach seeks to collapse two different elements and satisfy both with a single wholly conclusory allegation.  Plaintiffs must separately allege ability to affect prices to sustain their claim.

market and claims at issue here. Here, as in *Silver*, Plaintiffs ask the Court to stretch its imagination to link allegations that Pacilio and Bases "placed [some number of] spoof orders" in a large market to causation of artificial prices. *See id.* at *12; FAC ¶¶ 47, 48, 50, 52, 53, 56.[6] Moreover, Plaintiffs do not connect the timing of the selectively-excerpted chats cited to the purported spoofs and thus fail to support an inference of artificial price, let alone show any admission of causing one.

Plaintiffs ultimately fall back on the allegation that Bases and Pacilio spoofed "thousands" of times—while citing a mere 30 alleged instances—as a purported basis to conclude that they caused artificial prices for a period of eight years. But thousands of orders over this lengthy period is barely a blip in markets with hundreds of thousands of futures orders a day. *See* CME Group Product Slate, https://www.cmegroup.com/trading/products/#pageNumber=1&sortAsc=false&sortField=oi&subGroup=35 (nearly 800,000 precious metals futures orders and over 77,000 precious metals options order contracts were traded on August 12, 2020); *supra* n.1. Plaintiffs thus fail to allege that Bases and Pacilio caused artificial prices.

**Intent to Cause Artificial Prices.** Plaintiffs argue that they have sufficiently alleged intent, Opp. at 30, but their allegations are either conclusory, rely on group pleading, or do not address intent at all. *See, e.g.*, FAC ¶¶ 45, 48, 50, 52-53, 56-57, 60-61, 102, 103.[7] Plaintiffs must allege facts that "give rise to a *strong inference* of scienter." *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 383–84 (S.D.N.Y. 2009) (emphasis in original). Unlike here, plaintiffs in *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litigation*, 213 F. Supp. 3d

---

[6] Plaintiffs' citation to *Sonterra Capital Master Fund Ltd., v. Credit Suisse Group AG*, 277 F. Supp. 3d 521 (S.D.N.Y. 2017) is inapposite, as the inquiry there was not whether a specific episode caused an artificial price but rather whether there was a relationship between prices in two different markets.

[7] Plaintiffs' allegations of chat excerpts, without any context, fail to establish intent to cancel orders, much less intent to create a false impression of supply and demand. Even if the chats suggested an intent, intent to affect price alone is not manipulation. *CFTC v. Wilson*, No. 13 Civ. 7884, 2018 WL 6322024, at *14–*15 (S.D.N.Y. Nov. 30, 2018).

631 (S.D.N.Y. 2016), alleged a motive for manipulation, not mere conclusions that trades "did not reflect the legitimate forces of supply and demand." *Id.* at 670; Opp. at 31. And Plaintiffs' group allegations of "Defendants'" supposed profit motive, FAC ¶ 82, do not save their claim. *See Sullivan*, 2017 WL 685570, at *31. Plaintiffs have not alleged that Bases and Pacilio *personally* profited from their trades. Nor would that suffice in any event. *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 530, 539 (S.D.N.Y. 2008) ("[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants"). Indeed, if allegations of general profit motive were sufficient, this element would be satisfied for every market transaction. It is not, and so Plaintiffs have failed to plead market manipulation.

### III. Plaintiffs Concede Their Remaining Claims

By failing to address either point in their opposition, Plaintiffs concede that they do not have a principal-agent liability claim against Bases and Pacilio and that their manipulative device claim only applies to conduct following Rule 180.1's August 15, 2011 effective date. *See* Opp. at 32; *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("a court may…infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"). Following that date, as Plaintiffs themselves note, the relevant conduct for their manipulative device claim is the same as that for their manipulation claim. *See id.* Their pleading failures as to the latter claim thus also preclude the former. *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 855, 926 (S.D.N.Y. 2018).

### CONCLUSION

For these reasons, Plaintiffs' claims should be dismissed with prejudice.

Dated: August 13, 2020

By: */s/ David H. McGill*

David H. McGill
Erika L. Berman (*pro hac vice*)
Geoffrey J. Derrick
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
(202) 664-1900
david.mcgill@kobrekim.com
erika.berman@kobrekim.com
geoffrey.derrick@kobrekim.com

Jonathan D. Cogan
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
jonathan.cogan@kobrekim.com

*Attorneys for John Pacilio*

By:*/s/ Evan Cohen (on consent)*

Evan Cohen
David Allen
FINN DIXON & HERLING
6 Landmark Square
Stamford, CT 06901
(203) 325-5000
ECohen@fdh.com
DAllen@fdh.com

*Attorneys for Edward Bases*

7